## TITLE OF PURCHASER OF HORSE AGAINST LIEN OF STABLE KEEPER.

Common Pleas Court of Licking County.

JOHN MOORE v. CHARLES WHITEHEAD.

Decided, September Term, 1908.

*Lien for Care of Animals—Title of Purchaser from Owner Without Notice of Lien for Keep—Possession—Replevin—Section 3212.*

Where a stable keeper parts with possession of a horse upon which he has a lien for keep, the title of a purchaser of the horse for value and without notice is superior to the lien of the stable keeper.

*J. R. Fitzgibbon,* for plaintiff.
*S. L. James,* contra.

WICKHAM, J.

This is an action in replevin. The defendant filed an answer to the petition of the plaintiff, and the plaintiff filed a general demurrer to the answer. The case is submitted to the court on that demurrer.

The facts as they appear from the answer are, in substance, as follows: The defendant in 1905 was the owner and proprietor of a boarding stable for horses in the city of Newark, Licking county, Ohio; that he boarded a horse for some person whose name does not appear in the answer, which owner was accustomed to drive his horse about the city and vicinity, after which it was returned to the defendant's boarding stable. This occurred very frequently, as is usual with persons who keep a horse and hire it boarded by a stable-keeper.

The owner of the horse, in 1905, was indebted to the defendant for board and care of the horse. He went to the defendant's stable one day in June, 1905, as it was his custom to do, and told an employe that he wished to take a drive; defendant was not present, and the employe hitched the horse to the conveyance, and the owner drove it away. While out driving on that occasion he sold the horse to the plaintiff, who purchased it without knowledge that the owner was indebted to the defendant for board and keep of the horse; that is to say, he was a purchaser of the horse in good faith and for value, without any notice of any claim upon the horse by the defendant by way of lien or otherwise.

The defendant claimed a lien upon the horse for its board and keep under Section 3212, Revised Statutes of Ohio. The horse was not returned to the defendant's stable on that day, and on a subsequent day he saw it standing upon a public street of the city of Newark, hitched to a post; he thereupon unhitched the horse and took it to his stable, claiming the right to its possession by virtue of a stable-keeper's lien, and thereupon the plaintiff replevined the horse.

The demurrer raises the question whether at the time of the purchase of the horse by the plaintiff, he took it subject to the stable-keeper's lien, or upon the other hand whether by voluntarily permitting the former owner to take his horse away from his stable and use it, the stable-keeper lost the lien as between himself and the plaintiff, a purchaser for value without notice of the lien.

Counsel for defendant cite the case of *Seebaum* v. *Handy*, 46 O. S., 560, and say they rely upon that authority. The case cited by counsel is no authority. It and the case before us are entirely dissimilar in their facts. In that case Handy lived outside of the city of Cincinnati, and he frequently drove into the city and left his horse at a livery stable to be fed and cared for; he was a customer of the stable-keeper's for a long time, and became indebted to him · for horse feed and care to the amount of more than $100. He was accustomed to get his horse and drive home in the evening of every day, or nearly every day his horse was boarded at the stable. Mr. Handy was accidentally killed, and later the administrator of his estate drove the horse into the city and put it into another stable, whereupon a creditor of Handy, the plaintiff Seebaum, replevined the horse.

Our Supreme Court in that case held that Seebaum had no lien on the horse for its keep; that his case was not within the provisions of Section 3212, Revised Statutes. The court expressly say, at pages 568-9:

"What should be the rule in cases where the animal is placed by the owner with a person to be fed and cared for—not temporarily, a horse being ordinarily kept at home or somewhere else by the owner—but permanently for some time, either definite or indefinite, presents a different question."

The case mentioned by the Supreme Court is our case and presents, as the court say, an entirely different question from the one before the court in the case cited, and the court say they express no opinion; the language is:

"In such case where the owner is allowed to use it, its voluntary delivery to him for such purposes, might be said to imply a contract to return the animal, and· a failure to do so

would be such a fraud as to estop the owner from setting up that the lien had been lost by such voluntary delivery. But this is not the case before us, and we express no definite opinion upon it at this time.''

I find no case in point that sustains the claim of counsel for defendant, that a stable-keeper's lien is paramount to the title of the purchaser, except one case which I will call attention to later. I find authorities which hold that the stable-keeper's lien is not lost, as between him and the owner of the horse, by permitting the owner to take the horse out of his possession for use in the usual way (*Young* v. *Kimball*, 23 Pa. St., 193); nor between the stable-keeper and an attaching creditor. *Welch* v. *Barnes*, 65 N. W. Rep., 675.

In the case last cited the court go out of their way to hold that the lien is not lost as between the stable-keeper and a purchaser for value without notice of the lien, and this case would be an authority in point were not the expression a mere *dictum*. They say:

''And this being so the statute could not have intended to allow the owner to destroy the lien of the stable-keeper while having the possession of the horse on the street at the time of selling or mortgaging it to a stranger without notice of the lien. On the contrary we are of opinion that every person is bound to know that when he is about to become the purchaser or mortgagee of a horse found upon the street in the custody of its owner, it is incumbent upon him to make inquiry as to the place where the horse is boarded, and whether anything is due for its keeping. There is no greater hardship in this rule than there is in the general rule with respect to purchasers of personal property—that the purchaser gets no better title than the seller has.''

As against this *dictum*, if it is to be regarded as any authority, we cite the case of *Marseilles Mfg. Co.* v. *Morgan*, 10 N. W. Rep., 462, where it was held that C, the owner of the horses, having executed a mortgage to the Marseilles Mfg. Co., the mortgagee's title to the property was superior to that of Morgan, who claimed a lien for their feed and keep.

Another authority in point is the case of *Vinal* v. *Spoffard*,

a Massachusetts case, found reported in the 29 N. E. Rep., page 288; the second paragraph of the syllabus reads:

"Where a horse, kept at a livery stable, is used daily by the owner in his business, and is sold by him without the knowledge of the stable-keeper and delivered to the purchaser, the stable-keeper loses his lien for his bill, and can not regain it by seizing the horse."

This case is directly in point, and in our judgment is better authority than the North Dakota case above cited, under the title of *Welch* v. *Barnes*. The reasons given by the Dakota court do not seem to us to be sound. It places too great a hardship upon the purchaser of the horse. We think it is the policy of the law not to restrict the alienation of property. A purchaser of a horse ought not to be required to buy at his peril, nor ought he to be put upon inquiry to inquire of every feed stable-keeper, farrier, or others, whether they have liens upon a horse offered for sale. If one of two persons must suffer loss, it should be he who voluntarily puts it into the power of the owner of the horse to create the loss, and where a lien-holder voluntarily parts with possession and the owner sells, the stable-keeper should lose his lien rather than an innocent purchaser without notice be required to pay the amount of the seller's debt before he acquires a good title.

Possession of chattel property is in one sense evidence of ownership, and a purchaser has the right to presume, as against another who claims a lien, that the seller in possession is the owner and can convey a good title. Whatever the rule may be as between the stable-keeper and the owner, or between the stable-keeper and an attaching creditor, our conclusion is that as between the stable-keeper and a purchaser for value without notice of the claimed lien, the purchaser has the prior right.

Entertaining this view, our judgment is that the demurrer should be sustained.